Matter of Jackalyne WW. (Kevin VV.) (2021 NY Slip Op 03497)





Matter of Jackalyne WW. (Kevin VV.)


2021 NY Slip Op 03497


Decided on June 3, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 3, 2021

529764
[*1]In the Matter of Jackalyne WW., Alleged to be the Child of a Mentally Ill and/or Intellectually Disabled Parent. Schenectady County Department of Social Services, Respondent; Kevin VV., Appellant.

Calendar Date:April 29, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Todd G. Monahan, Schenectady, for appellant.
Christopher H. Gardner, County Attorney, Schenectady, (Sarah H. Petraccione of counsel), for respondent.
Veronica Reed, Niskayuna, attorney for the child.



Clark, J.
Appeal from an order of the Family Court of Schenectady County (Blanchfield, J.), entered August 2, 2019, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to adjudicate the subject child to be the child of a mentally ill and/or intellectually disabled parent, and terminated respondent's parental rights.
Respondent is the father of a child (born in 2016), who was born with a positive toxicology for cocaine and was discharged into the care and custody of petitioner after birth.[FN1] In August 2017, roughly 18 months after the child's birth, petitioner commenced this proceeding to terminate respondent's parental rights, alleging that, by reason of respondent's intellectual disability, the child would be in danger of becoming a neglected child if placed in respondent's custody. Family Court thereafter conducted a fact-finding hearing over the course of roughly 13 months, during which Family Court granted petitioner's motion to conform the pleadings to the proof to include the allegation that respondent also suffers from a mental illness that renders him unable to provide proper and adequate care for the child. By written decision and order entered in August 2019, Family Court granted the petition and terminated respondent's parental rights upon finding that, by reason of intellectual disability and mental illness, respondent is presently and for the foreseeable future unable to provide proper and adequate care for the child. Respondent appeals.
Initially, respondent challenges Family Court's grant of petitioner's motion to conform the pleadings to the proof — a motion which should be freely granted absent surprise or undue prejudice (see Matter of Jeff M. v Christine N., 101 AD3d 1426, 1428 [2012]; Paton v Weltman, 23 AD3d 895, 896 [2005]). Here, it is clear from a review of the record that respondent was neither surprised nor prejudiced as a result of the amendment to the pleadings. Although the petition was unartfully drafted, the caption and the ad damnum clause referenced both intellectual disability and mental illness. Additionally, petitioner indicated early on in the proceeding that it intended to prove that respondent suffers from a mental illness, and the parties operated accordingly throughout the proceeding. Further, the court-ordered psychological report, completed prior to the start of the fact-finding hearing, stated that petitioner "sought the termination of [respondent's] parental rights based on the presence of mental illness and intellectual disability." Moreover, respondent thoroughly explored the issue of mental illness during his cross-examination of the psychologist, as well as other witnesses. Thus, as respondent had sufficient notice of the mental illness allegation and ample opportunity to contest the evidence submitted in furtherance thereof, we find no abuse of discretion in Family Court's determination to grant petitioner's motion to conform the pleadings to the proof [*2](see Matter of Jeff M. v Christine N., 101 AD3d at 1428-1429; Matter of Jewle I., 44 AD3d 1105, 1107 [2007]).
Turning to the merits, in seeking the termination of parental rights based upon mental illness or intellectual disability, the petitioner must demonstrate, by clear and convincing evidence, that the parent is "presently and for the foreseeable future unable, by reason of mental illness or intellectual disability, to provide proper and adequate care for a child who has been in the care of an authorized agency for the period of one year" preceding the filing of the petition (Social Services Law § 384-b [4] [c]; see Matter of Logan Q. [Michael R.], 119 AD3d 1010, 1010 [2014]). To meet this burden, the petitioner must present evidence of the parent's underlying mental illness or intellectual disability, as well as the testimony of a qualified psychiatrist or psychologist explaining how such mental illness or intellectual disability affects the parent's present and future ability to care for the child (see Social Services Law § 384-b [6] [c], [e]; Matter of Amirah P. [Aisha P.], 187 AD3d 1432, 1433 [2020], lv denied 36 NY3d 907 [2021]; Matter of Logan Q. [Michael R.], 119 AD3d at 1010-1011). For the purpose of this proceeding, "'mental illness' means an affliction with a mental disease or mental condition which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child" (Social Services Law § 384-b [6] [a]). Further, under the Social Services Law, "'intellectual disability' means subaverage intellectual functioning which originate[d] during the developmental period and is associated with impairment in adaptive behavior to such an extent that if such child were placed in or returned to the custody of the parent, the child would be in danger of becoming a neglected child" (Social Services Law § 384-b [6] [b]).
To sustain its burden of proof, petitioner primarily relied upon the testimony and report of Elizabeth Shockmel, the clinical and forensic psychologist who completed the court-ordered psychological evaluation of respondent. Shockmel testified that, as part of her evaluation, she administered psychological testing to respondent, conducted a comprehensive interview of respondent, reviewed respondent's medical records from the Capital District Psychiatric Center and spoke with and obtained information from petitioner's caseworker, a clinical case manager at Northeast Child and Parent Society, respondent's employer and respondent's counselor. Shockmel stated that, based upon respondent's own reports and a review of his medical records, respondent has a history of drug abuse and was diagnosed several decades ago with schizophrenia — a heterogenous mental illness that often times presents as "disfunction or disorganization" in cognition, thinking, emotion and behavior[*3].[FN2]
With respect to the allegation of intellectual disability, Shockmel stated that the results of respondent's psychological testing placed him "in the area of borderline intellectual functioning." On the subject of adaptive functioning, which refers to one's "ability to respond to the demands of [his or her] environment," Shockmel testified that she was unable to separate the impairments caused by respondent's mental illness and those caused by his borderline intellectual functioning, so as to attribute his deficits to one or the other.[FN3] She asserted that respondent is safely and successfully able to cook, engage in acts of self-care, maintain part-time employment and manage an apartment. However, Shockmel asserted that respondent has "significant difficulty" when presented with situations that require abstract reasoning and faster processing and that multitasking, decision-making and problem-solving are challenging for respondent. In her report, Shockmel stated that respondent "appears to require the repetitive presentation of concrete material to learn new skills," which limits "his ability to effectively respond" to the child's "in-the-moment needs." Shockmel's assessment in this regard was supported by testimony from a clinical case manager at Northeast Parent and Child Society and petitioner's caseworker, which established that, over the years that the child was in petitioner's care, respondent never progressed beyond one hour of weekly supervised visits with the child.[FN4]
With respect to the allegation of mental illness, Shockmel testified that schizophrenia is generally a lifelong, chronic mental illness and that it is "exceedingly unlikely" that respondent will ever recover from it. Shockmel stated that respondent has been effectively managing his mental illness for several years and explained that he has done so by remaining committed to his medication regimen, regularly attending counseling and appointments with his treatment providers and abstaining from alcohol and recreational drugs. She asserted that maintaining a routine, getting sufficient and consistent sleep and adhering to his medication regimen were critical to respondent's continued management of his mental illness and she expressed concern that inserting a child into respondent's life could destabilize him. For example, she explained that, because a lack of sleep can cause an onset of symptoms, respondent regularly takes a sedative to help him sleep. However, she recognized the "catch-22" presented by respondent's medical need to regularly take a sedative and the potential safety concern of a single parent being sedated when the child was in need. Shockmel also asserted that stress — an unavoidable component of parenting — may often cause decompensation.
Shockmel opined that respondent's mental health issues, "working in concert with [his] cognitive limitations and impairments around judgment, decision-making, and problem-solving, preclude him at this time and [*4]for the foreseeable future from consistently and safely meeting the care needs of" the child. Although the record clearly demonstrates that respondent genuinely loves and desires to care for the child, there was ample evidence to establish that respondent suffers from a profound mental illness [FN5] that places the child at risk of becoming neglected and that such mental illness, together with his borderline intellectual functioning, renders him unable — presently and for the foreseeable future — to provide proper and adequate care for the child (see Social Services Law § 384-b [4] [c]; [6] [a]; Matter of Burton C. [Marcy C.], 91 AD3d 1038, 1039-1041 [2012]; Matter of Charles FF., 44 AD3d 1137, 1138 [2007], lv denied 9 NY3d 817 [2008]). Accordingly, we discern no basis upon which to disturb Family Court's determination to terminate respondent's parental rights.
Respondent's remaining arguments are without merit. Contrary to respondent's contention, we do not find that he received ineffective assistance of counsel (see Matter of Ashley L., 22 AD3d 915, 917 [2005]). Further, with respect to respondent's assertion that Family Court should have entered a suspended judgment, such disposition is not statutorily authorized in proceedings to terminate parental rights based upon mental illness or intellectual disability (see Matter of Charles FF., 44 AD3d at 1138; Matter of Sarah-Beth H., 34 AD3d 242, 243 [2006]; Matter of Dionne W., 267 AD2d 1096, 1097 [1999]; see generally Social Services Law § 384-b [3] [g]).
Garry, P.J., Aarons, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: The child's mother has surrendered her parental rights.

Footnote 2: During his testimony, respondent confirmed his history of drug abuse and his schizophrenia diagnosis.

Footnote 3: Given that respondent was in his late 50s, Shockmel did not have access to medical or educational records dating back to his formative years and therefore could not assert whether respondent's borderline intellectual functioning "originate[d] during [his] developmental period" (Social Services Law § 384-b [6] [b]).

Footnote 4: Petitioner's caseworker testified that respondent received one community visit with the child. The caseworker, who supervised the visit, characterized it as "really scary at times" because respondent was unable to adequately respond to the child's needs without intervention.

Footnote 5: We cannot determine that petitioner satisfied its burden of demonstrating that respondent qualifies as intellectually disabled under the Social Services Law, particularly given the absence of evidence as to whether respondent's borderline intellectual functioning "originate[d] during [his] developmental period" (Social Services Law § 384-b [6] [b]).